E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2426
     Facsimile: (213) 894-0141
     E-mail:    Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

11/20/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ jb _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

          Plaintiff,

               v.

BON KOO,

          Defendant.

No. 2:23-cr-00568-DSF-1

PLEA AGREEMENT FOR DEFENDANT
BON KOO

    1.   This constitutes the plea agreement between Bon Koo

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

         a.   Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to Count Two of an information in the

form attached to this agreement as Exhibit A, or a substantially similar form, which charges defendant with Failure to Maintain an Effective Anti-Money Laundering Program in violation of 31 U.S.C. §§ 5318(h), 5322 and 18 U.S.C. § 2(a).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing.

h.   Execute the Department of the Treasury - Internal Revenue Service Forms 13727 attached as Exhibits B and C. However, defendant need not provide a written statement of weaknesses, deficiencies, or violations, or a statement of intended corrective actions, as referenced therein.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further criminally prosecute defendant for any additional violations known to the USAO at the time of the plea arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 7 below or arising out of facts known to the USAO at the time of the plea.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.   Recommend that defendant be sentenced to a term of community confinement pursuant to U.S.S.G. § 5C1.1.

NATURE OF THE OFFENSES

4.   Defendant understands that for defendant to be guilty of the crime charged in the count two of the information, that is, Failure to Maintain an Effective Anti-Money laundering program, in

3

1  violation of 31 U.S.C. §§ 5318(h)(1) and 5322(b), the following must

2  be true:

3        a.  Joyro Investment Inc. ("Joyro") was domestic a

4  financial institution, as defined in 31 U.S.C. § 5312(a)(2);

5        b.  Defendant failed to implement one or more of the

6  following minimal requirements set forth by statute and regulation by

7  the Secretary of the Treasury:

8          i.  Establishing a system of effective written

9  policies, procedures, and internal controls for one or more of the

10 following:

11           (I)   verifying customer identification;

12           (II)   determining the occurrence of any

13 transactions or patterns of transactions required to be reported

14 in a Currency Transaction Report ("CTR") or Suspicious Activity

15 Report ("SAR"); or

16           (III)  creating and retaining CTR and/or SAR

17 records; or

18           (IV)  responding to law enforcement requests;

19         ii.  Designating an individual or individuals to

20 assure day-to-day compliance;

21         iii. Establishing training of appropriate personnel

22 concerning their responsibilities under the program; or

23         iv. Establishing internal and/or external independent

24 audit function to test compliance.

25       c.  Defendant acted willfully in causing to fail to

26 develop, implement, and maintain an effective anti-money laundering

27 program, and acted with knowledge that such failures were unlawful.

28

1      5.   A defendant may be guilty of Failure to Maintain an

2  Effective Anti-Money Laundering Program, even if the defendant

3  personally did not commit the act or acts constituting the crime but

4  aided and abetted in its commission. To "aid and abet" means

5  intentionally to help someone else commit a crime. To prove a

6  defendant guilty of Failure to Maintain an Effective Anti-Money

7  Laundering Program by aiding and abetting, the following must be

8  true:

9           a.   First, someone else committed the offense of Failure

10  to Maintain an Effective Anti-Money Laundering Program;

11           b.   Second, the defendant aided, counseled, commanded,

12  induced or procured that person with respect to at least one element

13  of Failure to Maintain an Effective Anti-Money Laundering Program;

14           c.   Third, the defendant acted with the intent to

15  facilitate the Failure to Maintain an Effective Anti-Money Laundering

16  Program; and

17           d.   Fourth, the defendant acted before the crime was

18  completed.

19                              PENALTIES

20      6.   Defendant understands that the statutory maximum sentence

21  that the Court can impose for a violation of 31 U.S.C. §§ 5318(h),

22  5322(a) is: five years' imprisonment, one year of supervised release,

23  a fine of $250,000, and a mandatory special assessment of $100.

24                            FACTUAL BASIS

25      7.   Defendant admits that defendant is, in fact, guilty of the

26  offenses to which defendant is agreeing to plead guilty.  Defendant

27  and the USAO agree to the statement of facts provided below and agree

28  that this statement of facts is sufficient to support pleas of guilty

to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 9 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

Throughout the relevant time period, defendant was the manager
of Joyro's day-to-day operations. Defendant knew that Joyro was a
domestic financial institution, as defined in 31 U.S.C. § 5312(a)(2).
Defendant was aware that the Bank Secrecy Act ("BSA") required the
filing of CTRs with the Department of Treasury, including for any
transaction involving more than $10,000 in currency on a single day.
For the purposes of filing a CTR, defendant knew that the BSA
required defendant to aggregate multiple currency transactions and
treat them as a single transaction if multiple transactions were
conducted by or on behalf of one person in one 24-hour period.

Beginning on an unknown date, and continuing through in or
around July of 2019, defendant, acting as manager of Joyro, would
cash checks in aggregate over $10,000 for his clients and give them
more than $10,000 the same day, without filing any CTRs. Defendant
would do so by depositing one check into Bank of Hope and one check
into Hanmi Bank, both under $10,000. Defendant split these checks
between the two accounts but would not file CTRs for these
transactions. By submitting two checks, each in different accounts
and under different names, defendant and the Entities avoided filing
CTRs. Defendant would also accept multiple checks and deposit them in
a single day, but he would only give his clients up to $10,000 per
day and tell them to return another day to get the other $10,000,
therefore defendant and the Entities avoided filing CTRs.

1    Defendant was also aware that the BSA required financial
2 institutions, including Joyro, to file a SAR with the Department of
3 Treasury for a transaction conducted or attempted involving at least
4 $5,000 in funds or other assets, where the financial institution
5 knew, suspected, or has reason to suspect that the transaction (or a
6 pattern of transactions of which the transaction was a part): (1)
7 involves funds derived from illegal activity or was intended or
8 conducted in order to hide or disguise funds or assets derived from
9 illegal activity as a part of a plan to violate or evade any federal
10 law or regulation or to avoid any transaction reporting requirement
11 under federal law or regulation; (2) was designed, whether through
12 structuring or other means, to evade any requirements of this part or
13 of any other regulations promulgated under the BSA; (3) had no
14 business or apparent lawful purpose or was not the sort in which the
15 particular customer would normally be expected to engage, and the
16 financial institution knew of no reasonable explanation for the
17 transaction after examining the available facts; or (4) involved the
18 use of the financial institution to facilitate criminal activity.

19    Defendant caused Joyro to maintain a separate account which was
20 used to cash checks from insurance companies and attorney client
21 trust accounts. Defendant believed these checks from insurance
22 companies and attorneys' client trust accounts, which aggregated to
23 more than $5,000, were the proceeds of insurance fraud. "Runners"
24 would bring in checks, but they were not the payees whose names were
25 on the checks. The checks were endorsed before they were brought in,
26 and defendant did not know if the payees were actually signing the
27 checks. Defendant believed the checks were from an insurance fraud

28

scheme based on conversations he overheard from runners discussing the fraud.

Finally, defendant was aware that the BSA required Joyro to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent Joyro from being used to facilitate money laundering, by, among other elements, having effective written policies and procedures for verifying customer identification, determining whether CTRs and SARs needed to be filed, and having internal controls and independent testing to assure compliance.  Although Joyro had some written policies and procedures regarding some, but not all, of the items required by the BSA, defendant, as Joyro's manager, failed to implement and maintain key portions of the written programs, such as procedures related to internal controls and independent testing.

Defendant acted willfully in failing to develop, implement, and maintain an effective anti-money laundering program, and acted with knowledge that such failures were unlawful.

<u>SENTENCING FACTORS</u>

8.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of conviction.

TOTAL OFFENSE LEVEL

9.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | USSG § 2S1.3(a)(1) |
| Value of Funds: | +2 | USSG § 2S1.3(b)(1) |
| Violations of BSA >$100K in 12 months: | +2 | USSG § 2S1.3(b)(2) |
| Acceptance of Responsibility (if applicable at sentencing): | -2 | USSG § 3E1.1 |
| Total Offense Level: | 10 | |

10.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

11.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

12.  Defendant and the USAO agree that any sentence of probation, home or community confinement, or supervised release shall include a provision barring defendant from acting as, or participating in, any check-cashing or other money-services business.

WAIVER OF CONSTITUTIONAL RIGHTS

13.  Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

1           c.    The right to be presumed innocent and to have the

2   burden of proof placed on the government to prove defendant guilty

3   beyond a reasonable doubt.

4           d.    The right to confront and cross-examine witnesses

5   against defendant.

6           e.    The right to testify and to present evidence in

7   opposition to the charges, including the right to compel the

8   attendance of witnesses to testify.

9           f.    Any and all rights to pursue any affirmative defenses,

10   Fourth Amendment claims, and other pretrial motions that have been

11   filed or could be filed.

12                  WAIVER OF APPEAL OF CONVICTION

13     14.   Defendant understands that, with the exception of an appeal

14   based on a claim that defendant's guilty pleas were involuntary, by

15   pleading guilty defendant is waiving and giving up any right to

16   appeal defendant's convictions on the offenses to which defendant is

17   pleading guilty.

18           LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19     15.   Defendant agrees that, provided the Court imposes sentence

20   of community confinement, defendant gives up the right to appeal any

21   portion of the sentence.

22     16.   The USAO agrees that, provided the Court imposes sentence

23   corresponding to an offense level of 10 and the criminal history

24   category calculated by the Court, the USAO gives up the right to

25   appeal any portion of the sentence.

26             RESULT OF WITHDRAWAL OF GUILTY PLEA

27     17.   Defendant agrees that if, after entering guilty pleas

28   pursuant to this agreement, defendant seeks to withdraw and succeeds

in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

18.  Defendant agrees that if defendant's conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

1

## EFFECTIVE DATE OF AGREEMENT

2      19.   This agreement is effective upon signature and execution of

3  all required certifications by defendant, defendant's counsel, and an

4  Assistant United States Attorney.

5

## BREACH OF AGREEMENT

6      20.   Defendant agrees that if defendant, at any time after the

7  signature of this agreement and execution of all required

8  certifications by defendant, defendant's counsel, and an Assistant

9  United States Attorney, knowingly violates or fails to perform any of

10  defendant's obligations under this agreement ("a breach"), the USAO

11  may declare this agreement breached.  All of defendant's obligations

12  are material, a single breach of this agreement is sufficient for the

13  USAO to declare a breach, and defendant shall not be deemed to have

14  cured a breach without the express agreement of the USAO in writing.

15  If the USAO declares this agreement breached, and the Court finds

16  such a breach to have occurred, then: (a) if defendant has previously

17  entered guilty pleas pursuant to this agreement, defendant will not

18  be able to withdraw the guilty pleas, and (b) the USAO will be

19  relieved of all its obligations under this agreement.

20      21.   Following the Court's finding of a knowing breach of this

21  agreement by defendant, should the USAO choose to pursue any charge

22  or any civil, administrative, or regulatory action that was either

23  dismissed or not filed as a result of this agreement, then:

24           a.   Defendant agrees that any applicable statute of

25  limitations is tolled between the date of defendant's signing of this

26  agreement and the filing commencing any such action.

27           b.   Defendant waives and gives up all defenses based on

28  the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

22.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

23.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 8 are consistent with the facts of this

case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.  This paragraph also does not affect defendant's and the USAO's obligations contained in paragraphs 2-3 of this Agreement.

24.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

25.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        26.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5

6    AGREED AND ACCEPTED

7    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
8    CALIFORNIA

9    E. MARTIN ESTRADA
     United States Attorney

10

11    _Dan Boyle_____          9.8.2023
      DAN G. BOYLE                         Date
12    Assistant United States Attorney

13    _____          7/10/2023
      BON KOO                              Date
14    Defendant

15    _____          9.12.2023
      SIMON LEEN                           Date
16    Attorney for Defendant
      BON KOO

17

18    //

19    //

20    //

21

22

23

24

25

26

27

28

                           15

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough
time to review and consider this agreement, and I have carefully and
thoroughly discussed every part of it with my attorney.  I understand
the terms of this agreement, and I voluntarily agree to those terms.
I have discussed the evidence with my attorney, and my attorney has
advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charges and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____     _____7/10/2023_____
BON KOO                             Date
Defendant

//

//

//

16

1

2

3                       CERTIFICATION OF DEFENDANT'S ATTORNEY

4        I am BON KOO's attorney.  I have carefully and thoroughly

5   discussed every part of this agreement with my client.  Further, I

6   have fully advised my client of his rights, of possible pretrial

7   motions that might be filed, of possible defenses that might be

8   asserted either prior to or at trial, of the sentencing factors set

9   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

10  provisions, and of the consequences of entering into this agreement.

11  To my knowledge: no promises, inducements, or representations of any

12  kind have been made to my client other than those contained in this

13  agreement; no one has threatened or forced my client in any way to

14  enter into this agreement; my client's decision to enter into this

15  agreement is an informed and voluntary one; and the factual basis set

16  forth in this agreement is sufficient to support my client's entry of

17  a guilty plea pursuant to this agreement.

18

19  SIMON LEEN                              9/12/2023
    Attorney for Defendant                  Date
20  BON KOO

21

22

23

24

25

26

27

28

                                    17

# **EXHIBIT A**

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

UNITED STATES OF AMERICA,            CR No.

11             Plaintiff,            I N F O R M A T I O N

12             v.                    [31 U.S.C. §§ 5318(h)(1), 5322(a):
                                     Failure to Maintain an Effective
13   BON KOO and                     Anti-Money Laundering Program]
     JOYRO INVESTMENT, INC.,
14
15             Defendants.

16

17        The United States Attorney charges:

18                            COUNT ONE

19                   [31 U.S.C. §§ 5318(h)(1), 5322(a)]

20                   [Defendant JOYRO INVESTMENT INC.]

21        From an unknown date to on or about July 31, 2019, in Los

22   Angeles County, within the Central District of California and

23   elsewhere, defendant JOYRO INVESTMENT INC. ("JOYRO") willfully failed

24   to develop, implement, and maintain an effective anti-money

25   laundering program for financial institutions and a money services

26   business (as these terms are defined in the Bank Secrecy Act and in

27   regulations issued thereunder), including, at a minimum: (a) the

28   development of internal policies, procedures, and controls; (b) the

designation of a compliance officer; (c) an ongoing employee training program; and (d) an independent audit function to test programs, as required by the Secretary of the Treasury. Specifically, defendant JOYRO willfully failed to: (1) enact adequate policies, procedures, and controls to ensure that defendant JOYRO obtained adequate information about its customers and adequately reported suspicious financial transactions in accordance with the Bank Secrecy Act; (2) sufficiently train defendant JOYRO's employees to monitor for suspicious activity and comply with the Bank Secrecy Act; and (3) implement suggestions from independent examinations for compliance, which caused defendant JOYRO to fail to have sufficient procedures to protect against money laundering.

1                            COUNT TWO

2         [31 U.S.C. §§ 5318(h)(1), 5322(a); 18 U.S.C. § 2(a)]

3                         [Defendant BON KOO]

4        From an unknown date to on or about July 31, 2019, in Los

5   Angeles County, within the Central District of California, and

6   elsewhere, defendant BON KOO aided, abetted, counseled, commanded,

7   induced, and procured Joyro Investment Inc. in the willful failure to

8   develop, implement, and maintain an effective anti-money laundering

9   program for financial institutions and a money services business (as

10  these terms are defined in the Bank Secrecy Act and in regulations

11  issued thereunder), including, at a minimum: (a) the development of

12  internal policies, procedures, and controls; (b) the designation of a

13  compliance officer; (c) an ongoing employee training program; and (d)

14  an independent audit function to test programs, as required by the

15  Secretary of the Treasury.

16

17

18                                 E. MARTIN ESTRADA
                                   United States Attorney

19

20

21                                 MACK E. JENKINS
                                   Assistant United States Attorney
22                                 Chief, Criminal Division

23                                 JONATHAN GALATZAN
                                   Assistant United States Attorney
24                                 Chief, Asset Forfeiture &
                                   Recovery Section

25                                 DAN G. BOYLE
                                   Assistant United States Attorney
26                                 Asset Forfeiture & Recovery
                                   Section
27

28

                                  3

# EXHIBIT B



**Department of the Treasury**
**Internal Revenue Service**
**Small Business/Self Employed Division**
Exam Operations/Specialty Examination: BSA
9350 Flair Drive, Mail Stop 1506
El Monte, CA 91731

**Date:**
03/24/2023
**Person to contact:**
Amy Kim
**Employee ID number:**
1352938
**Contact telephone number:**
(626) 927-1386
**Case control number:**
458234

Joyro Investment Inc
9814 Garvey Ave. #21 A & B
South El Monte, CA 91733
Attn: Bon Kang Koo, President / Compliance Officer

Dear Mr. Bon Kang Koo:

**Why you're receiving this letter**
During a Bank Secrecy Act (BSA) examination of Joyro Investment Inc, we identified apparent weaknesses, deficiencies, or violations of the BSA or its implementing regulations.

The enclosed Form 13726, Summary of Examination Findings and Recommendations, lists the apparent violations with applicable regulations.

**What you need to do if you agree**
If you accept our findings with any accompanying recommendations and agree to implement timely corrective actions, please sign the enclosed Form 13727, Acceptance Statement. In addition, prepare a written statement of why the weaknesses, deficiencies, or violations occurred and what corrective action you will take. Include confirmation of any delinquent or amended BSA forms you filed electronically. Send these documents to the address shown above within 30 days from the date of this letter.

**What you need to do if you don't agree**
Send a written explanation, to the address above within 30 days from the date of this letter, detailing what you disagree with and why.

**What you need to know**
We are required to forward a copy of our report, including any written response you provide, to the Financial Crimes Enforcement Network (FinCEN). FinCEN will determine if penalties under the BSA are to be asserted. In addition, IRS has memorandums of understanding (MOUs) with state regulators. Therefore, we may share a copy of our report with a state regulator if required in following the agreements of each MOU.

If you have questions, you can call the contact person shown above.

Thank you for your cooperation.

Sincerely,

Digitally signed by Beth E. Stroud
Date: 2023.03.24 16:33:39 -07'00'

Beth E Stroud, Group 1506
Bank Secrecy Act Supervisory Internal Revenue Agent

Enclosures:
Form 13726
Form 13727

| Form **13726**<br>(July 2021) | Department of the Treasury - Internal Revenue Service<br>## Summary of Examination Findings and Recommendations |
|---|---|

| Business name | Doing business as |
|---|---|
| Joyro Investment Inc | Joyro Investment Inc |

| Business address | TIN of entity | Telephone number |
|---|---|---|
| 9814 Garvey Ave. #21A&B | 20-0919240 | (626) 244 6259 |

| City | State | ZIP code |
|---|---|---|
| South El Monte | California | 91733 |

| Types of financial Services Offered | If an Agent, Specify Agency *(if more than two go onto next line)* | |
|---|---|---|
| Primary Financial Service (First Line) | Agency 1 | Agency 2 |
| Check Casher | | |
| | | |
| | | |
| | | |
| | | |

**States where financial services offered** *(select all that apply)*

| | | | | |
|---|---|---|---|---|
| ☐ All States and Territories | ☐ All States | ☐ All Territories | | |
| ☐ Alabama (AL) | ☐ Idaho (ID) | ☐ Mississippi (MS) | ☐ Oklahoma (OK) | ☐ Washington (WA) |
| ☐ Alaska (AK) | ☐ Illinois (IL) | ☐ Missouri (MO) | ☐ Oregon (OR) | ☐ West Virginia (WV) |
| ☐ Arizona (AZ) | ☐ Indiana (IN) | ☐ Montana (MT) | ☐ Pennsylvania (PA) | ☐ Wisconsin (WI) |
| ☐ Arkansas (AR) | ☐ Iowa (IA) | ☐ Nebraska (NE) | ☐ Puerto Rico (PR) | ☐ Wyoming (WY) |
| ☒ California (CA) | ☐ Kansas (KS) | ☐ Nevada (NV) | ☐ Rhode Island (RI) | |
| ☐ Colorado (CO) | ☐ Kentucky (KY) | ☐ New Hampshire (NH) | ☐ South Carolina (SC) | ☐ American Samoa (AS) |
| ☐ Connecticut (CT) | ☐ Louisiana (LA) | ☐ New Jersey (NJ) | ☐ South Dakota (SD) | ☐ FS of Micronesia (FM) |
| ☐ Delaware (DE) | ☐ Maine (ME) | ☐ New Mexico (NM) | ☐ Tennessee (TN) | ☐ Guam (GU) |
| ☐ District of Columbia (DC) | ☐ Maryland (MD) | ☐ New York (NY) | ☐ Texas (TX) | ☐ Marshall Islands (MH) |
| ☐ Florida (FL) | ☐ Massachusetts (MA) | ☐ North Carolina (NC) | ☐ Utah (UT) | ☐ N Mariana Islands (MP) |
| ☐ Georgia (GA) | ☐ Michigan (MI) | ☐ North Dakota (ND) | ☐ Vermont (VT) | ☐ Palau (PW) |
| ☐ Hawaii (HI) | ☐ Minnesota (MN) | ☐ Ohio (OH) | ☐ Virginia (VA) | ☐ Virgin Islands (VI) |

| Date of initial interview | Exam period start | Exam period end | Corrective action or response due date *(30 days)* |
|---|---|---|---|
| 9/19/2017 | 02/01/2017 | 07/31/2017 | 04/20/2023 |

**Apparent Anti-Money Laundering Program Violations**

| Date | 31 C.F.R. Chapter X Violation and Description of Regulation |
|---|---|
| 9/19/2017 | § 1022.210(d)(1) (formerly 103.125(d)(1)) Policies, Procedures, and Internal Controls - Money Services Business |
| 9/19/2017 | § 1022.210(d)(2) Anti-Money Laundering Program - Designation of Compliance Officer |
| 9/19/2017 | § 1022.210(d)(4) Anti-Money Laundering Program - Independent Review |
| | |
| | |
| | |
| | |
| | |

**Apparent Reporting and Recordkeeping Violations**

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 2/6/2017 | $12,038.40 | David Nguyen | § 1022.313 |
| 2/16/2017 | $15,699.90 | David Nguyen | § 1022.313 |
| 3/1/2017 | $12,539.34 | David Nguyen | § 1022.313 |
| 3/15/2017 | $26,573.58 | David Nguyen | § 1022.313 |
| 3/17/2017 | $18,114.60 | David Nguyen | § 1022.313 |
| 4/4/2017 | $19,259.46 | David Nguyen | § 1022.313 |
| 4/5/2017 | $18,369.00 | David Nguyen | § 1022.313 |
| 4/7/2017 | $13,652.10 | David Nguyen | § 1022.313 |
| 4/10/2017 | $24,264.90 | David Nguyen | § 1022.313 |
| 5/9/2017 | $11,800.80 | David Nguyen | § 1022.313 |
| 6/9/2017 | $12,492.81 | David Nguyen | § 1022.313 |
| 6/27/2017 | $18,238.77 | David Nguyen | § 1022.313 |
| 7/8/2017 | $10,731.60 | David Nguyen | § 1022.313 |
| 7/27/2017 | $15,679.13 | David Nguyen | § 1022.313 |
| 3/4/2017 | $10,231.29 | Jennie Hua | § 1022.313 |
| 4/4/2017 | $14,094.59 | Jennie Hua | § 1022.313 |
| 5/11/2017 | $13,158.79 | Jennie Hua | § 1022.313 |
| 2/2/2017 | $13,384.37 | Lin Hua | § 1022.313 |
| 2/10/2017 | $11,378.44 | Lin Hua | § 1022.313 |
| 2/24/2017 | $13,694.48 | Lin Hua | § 1022.313 |
| 2/27/2017 | $26,531.02 | Lin Hua | § 1022.313 |
| 4/28/2017 | $14,687.06 | Lin Hua | § 1022.313 |
| 5/3/2017 | $15,840.00 | Lin Hua | § 1022.313 |
| 5/15/2017 | $15,456.33 | Lin Hua | § 1022.313 |
| 6/3/2017 | $20,597.85 | Lin Hua | § 1022.313 |
| 6/23/2017 | $11,487.32 | Lin Hua | § 1022.313 |
| 6/30/2017 | $22,875.68 | Lin Hua | § 1022.313 |
| 7/3/2017 | $14,695.64 | Lin Hua | § 1022.313 |
| 7/12/2017 | $14,165.26 | Lin Hua | § 1022.313 |
| 7/25/2017 | $17,606.99 | Lin Hua | § 1022.313 |
| 2/6/2017 | $13,118.49 | Sean Nguyen | § 1022.313 |
| 2/15/2017 | $13,015.22 | Sean Nguyen | § 1022.313 |
| 2/22/2017 | $14,700.51 | Sean Nguyen | § 1022.313 |
| 2/24/2017 | $17,030.97 | Sean Nguyen | § 1022.313 |
| 2/28/2017 | $17,529.93 | Sean Nguyen | § 1022.313 |
| 3/6/2017 | $18,085.32 | Sean Nguyen | § 1022.313 |
| 3/10/2017 | $12,054.24 | Sean Nguyen | § 1022.313 |
| 4/21/2017 | $18,512.01 | Sean Nguyen | § 1022.313 |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 4/25/2017 | $13,393.86 | Sean Nguyen | § 1022.313 |
| 5/17/2017 | $17,318.39 | Sean Nguyen | § 1022.313 |
| 5/26/2017 | $20,116.80 | Sean Nguyen | § 1022.313 |
| 6/1/2017 | $17,212.14 | Sean Nguyen | § 1022.313 |
| 6/7/2017 | $14,030.28 | Sean Nguyen | § 1022.313 |
| 2/6/2017 | $12,038.40 | David Nguyen | § 1022.312 |
| 2/16/2017 | $15,699.90 | David Nguyen | § 1022.312 |
| 3/1/2017 | $12,539.34 | David Nguyen | § 1022.312 |
| 3/15/2017 | $26,573.58 | David Nguyen | § 1022.312 |
| 3/17/2017 | $18,114.60 | David Nguyen | § 1022.312 |
| 4/4/2017 | $19,259.46 | David Nguyen | § 1022.312 |
| 4/5/2017 | $18,369.00 | David Nguyen | § 1022.312 |
| 4/7/2017 | $13,652.10 | David Nguyen | § 1022.312 |
| 4/10/2017 | $24,264.90 | David Nguyen | § 1022.312 |
| 5/9/2017 | $11,800.80 | David Nguyen | § 1022.312 |
| 6/9/2017 | $12,492.81 | David Nguyen | § 1022.312 |
| 6/27/2017 | $18,238.77 | David Nguyen | § 1022.312 |
| 7/8/2017 | $10,731.60 | David Nguyen | § 1022.312 |
| 7/27/2017 | $15,679.13 | David Nguyen | § 1022.312 |
| 3/4/2017 | $10,231.29 | Jennie Hua | § 1022.312 |
| 4/4/2017 | $14,094.59 | Jennie Hua | § 1022.312 |
| 5/11/2017 | $13,158.79 | Jennie Hua | § 1022.312 |
| 2/2/2017 | $13,384.37 | Lin Hua | § 1022.312 |
| 2/10/2017 | $11,378.44 | Lin Hua | § 1022.312 |
| 2/24/2017 | $13,694.48 | Lin Hua | § 1022.312 |
| 2/27/2017 | $26,531.02 | Lin Hua | § 1022.312 |
| 4/28/2017 | $14,687.06 | Lin Hua | § 1022.312 |
| 5/3/2017 | $15,840.00 | Lin Hua | § 1022.312 |
| 5/15/2017 | $15,456.33 | Lin Hua | § 1022.312 |
| 6/3/2017 | $20,597.85 | Lin Hua | § 1022.312 |
| 6/23/2017 | $11,487.32 | Lin Hua | § 1022.312 |
| 6/30/2017 | $22,875.68 | Lin Hua | § 1022.312 |
| 7/3/2017 | $14,695.64 | Lin Hua | § 1022.312 |
| 7/12/2017 | $14,165.26 | Lin Hua | § 1022.312 |
| 7/25/2017 | $17,606.99 | Lin Hua | § 1022.312 |
| 2/6/2017 | $13,118.49 | Sean Nguyen | § 1022.312 |
| 2/15/2017 | $13,015.22 | Sean Nguyen | § 1022.312 |
| 2/22/2017 | $14,700.51 | Sean Nguyen | § 1022.312 |
| 2/24/2017 | $17,030.97 | Sean Nguyen | § 1022.312 |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 2/28/2017 | $17,529.93 | Sean Nguyen | § 1022.312 |
| 3/6/2017 | $18,085.32 | Sean Nguyen | § 1022.312 |
| 3/10/2017 | $12,054.24 | Sean Nguyen | § 1022.312 |
| 4/21/2017 | $18,512.01 | Sean Nguyen | § 1022.312 |
| 4/25/2017 | $13,393.86 | Sean Nguyen | § 1022.312 |
| 5/17/2017 | $17,318.39 | Sean Nguyen | § 1022.312 |
| 5/26/2017 | $20,116.80 | Sean Nguyen | § 1022.312 |
| 6/1/2017 | $17,212.14 | Sean Nguyen | § 1022.312 |
| 6/7/2017 | $14,030.28 | Sean Nguyen | § 1022.312 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Explanation of Apparent Violations Regulations and Recommendations**

31 C.F.R. § 1022.210(d)(1)
Anti-Money Laundering Program Requirements for Money Services Businesses – Internal Controls
You, as a money services business, must develop, implement and maintain an effective Anti-Money Laundering program. At a minimum your program must incorporate policies, procedures, and internal controls to reasonably assure compliance with the Bank Secrecy Act. This includes, to the extent applicable to your business, requirements for verifying customer identification, filing reports, creating and retaining records, and responding to law enforcement requests. In addition, any automated data processing systems should integrate your compliance procedures with the system. The following internal control deficiencies have been identified.

You have a written anti-money laundering (AML) program. However, the AML program is not adequate. The AML program fails to:
(1) Be risk based. The AML program has not been adjusted based on risk and a risk assessment has never been completed.
(2) Ensure policies in place to prevent and monitor financial crimes through high risk and high volume check cashing transactions.
(3) Provide adequate policies and procedures to identify CTR filing requirements, specifically when multiple checks are cashed.
(4) Provide adequate policies and procedures to verify and record identification information for transactions requiring a CTR , specifically a SSN or TIN of any person or entity on whose behalf the transaction was conducted.
(5) Provide procedures to file MSB registration.
(6) Provide initial training.

Your failed to implement the AML program as follows:
(1) File all required CTRs.
(2) Not accept third party checks.
(3) Verify the customer's identification prior to cashing a check
(4) Keep a record/receipt of the transaction
(5) File a CTR for multiple checks
(6) Failure to obtain all information (SSN, occupation, etc. for CTR transactions)

31 C.F.R. § 1022.210(d)(2)
Anti-Money Laundering Program Requirements for Money Services Business - Designation of a Compliance Officer
You, as a money services business, are required to designate a qualified person to assure day-to-day compliance with your anti-money laundering program and the Bank Secrecy Act. The responsibilities of such person shall include assuring that: reports are properly filed and records are created and retained, the compliance program is updated as necessary to reflect current requirements of the Bank Secrecy Act, and education and/or training of appropriate personnel is provided.

Mr. Bon Kang Koo was the designated compliance officer during the examination period. Mr. Koo failed to ensure day to day compliance with the BSA. He failed to ensure the AML program was updated and implemented, failed to identify all CTR filing requirements, and failed to verify customers prior to conducting transactions. The lack of monitoring lead to systemic failure to file reports. Mr. Koo also failed to ensure independent reviews were conducted.

31 C.F.R. § 1022.210(d)(4)
Anti-Money Laundering Program Requirements for Money Services Businesses - Independent Review
You, as a money services business, are required to provide for an independent review to monitor and maintain an adequate program. The scope and frequency of your review should be commensurate with the risk of the financial services you provide. Such review may be conducted by an officer or employee so long as the reviewer is not the person you have designated as the compliance officer.

You failed to conduct periodic independent review. An independent review has never been conducted.

31 C.F.R. § 1022.313
Currency Transaction Reports by Money Services Businesses - Aggregate Transactions
You, as a money services business, are required to file a Currency Transaction Report, on multiple currency transactions, if you have knowledge that the transactions are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day.

You failed to file 43 CTRs for multiple checks cashed aggregating to over $10,000 for one individual in one day during the examination period. The checks were all cashed by a third party, who cashed multiple checks on behalf of multiple payees.

31 C.F.R § 1022.312
Identification Required for Transactions Conducted at Money Services Businesses
You, as a money services business, are required to verify and record the name and address of an individual conducting one or more transactions within a business day where a Currency Transaction Report would be required. You must secure the information prior to concluding the transaction. In addition, you are required to record the identity, account number, and the social security or taxpayer identification number, if any, of any person or entity on whose behalf the individual is conducting the transaction.

You conducted 43 CTR transactions and failed to verify the name and address and obtain a social security number prior to conducting the transactions.

| Form **13727**<br>(July 2007) | Department of the Treasury - Internal Revenue Service<br>## Acceptance Statement |
|---|---|

| Business name | Employer Identification Number (EIN) |
|---|---|
| Joyro Investment Inc | 20-0919240 |

| Business address | Telephone number |
|---|---|
| 9814 Garvey Ave. #21A & B | (626) 244 6259 |

| City | State | Zip code |
|---|---|---|
| South El Monte | California | 91733 |

I, Bon Kang Koo _____ have received and reviewed Form 13726, *Summary of Examination Findings and Recommendations*, addressing specific areas of noncompliance with the Bank Secrecy Act recordkeeping and reporting requirements, dated _____.

I agree to follow the recommendations and to correct the Anti-Money Laundering program, reporting and recordkeeping violations.

I will take the following specific corrective action(s) by _____.

| Signature | Title | Date |
|---|---|---|
| | | |

Catalog Number 48742Z                     www.irs.gov                     Form **13727** (7-2007)

# EXHIBIT C



**Department of the Treasury**
**Internal Revenue Service**
**Small Business/Self Employed Division**
Exam Operations/Specialty Examination: BSA
9350 Flair Drive, Mail Stop 1506
El Monte, CA 91731

**Date:**
03/24/2023
**Person to contact:**
Amy Kim
**Employee ID number:**
1352938
**Contact telephone number:**
(626) 927-1386
**Case control number:**
458235

Sarang Corp
9814 Garvey Ave. #21 A & B
South El Monte, CA 91733
Attn: Sun Koo, President

Dear Mrs. Sun Koo:

**Why you're receiving this letter**
During a Bank Secrecy Act (BSA) examination of Sarang Corp , we identified apparent weaknesses, deficiencies, or violations of the BSA or its implementing regulations.

The enclosed Form 13726, Summary of Examination Findings and Recommendations, lists the apparent violations with applicable regulations.

**What you need to do if you agree**
If you accept our findings with any accompanying recommendations and agree to implement timely corrective actions, please sign the enclosed Form 13727, Acceptance Statement. In addition, prepare a written statement of why the weaknesses, deficiencies, or violations occurred and what corrective action you will take. Include confirmation of any delinquent or amended BSA forms you filed electronically. Send these documents to the address shown above within 30 days from the date of this letter.

**What you need to do if you don't agree**
Send a written explanation, to the address above within 30 days from the date of this letter, detailing what you disagree with and why.

**What you need to know**
We are required to forward a copy of our report, including any written response you provide, to the Financial Crimes Enforcement Network (FinCEN). FinCEN will determine if penalties under the BSA are to be asserted. In addition, IRS has memorandums of understanding (MOUs) with state regulators. Therefore, we may share a copy of our report with a state regulator if required in following the agreements of each MOU.

If you have questions, you can call the contact person shown above.

Thank you for your cooperation.

Sincerely,

*Beth E Stroud*
Digitally signed by Beth E. Stroud
Date: 2023.03.24 16:28:59 -07'00'

Beth E Stroud, Group 1506
Bank Secrecy Act Supervisory Internal Revenue Agent

Enclosures:
Form 13726
Form 13727

| Form **13726**<br>(July 2021) | Department of the Treasury - Internal Revenue Service<br>**Summary of Examination Findings and Recommendations** |
|---|---|

| Business name | Doing business as |
|---|---|
| Sarang Corp | My Darling Market |

| Business address | TIN of entity | Telephone number |
|---|---|---|
| 9814 Garvey Ave. #21A&B | 42-1582020 | (626) 244 6259 |

| City | State | ZIP code |
|---|---|---|
| South El Monte | California | 91733 |

| Types of financial Services Offered | If an Agent, Specify Agency *(if more than two go onto next line)* | |
|---|---|---|
| Primary Financial Service (First Line) | Agency 1 | Agency 2 |
| Check Casher | | |
| | | |
| | | |
| | | |
| | | |

States where financial services offered *(select all that apply)*

| | | | | |
|---|---|---|---|---|
| ☐ All States and Territories | ☐ All States | ☐ All Territories | | |
| ☐ Alabama (AL) | ☐ Idaho (ID) | ☐ Mississippi (MS) | ☐ Oklahoma (OK) | ☐ Washington (WA) |
| ☐ Alaska (AK) | ☐ Illinois (IL) | ☐ Missouri (MO) | ☐ Oregon (OR) | ☐ West Virginia (WV) |
| ☐ Arizona (AZ) | ☐ Indiana (IN) | ☐ Montana (MT) | ☐ Pennsylvania (PA) | ☐ Wisconsin (WI) |
| ☐ Arkansas (AR) | ☐ Iowa (IA) | ☐ Nebraska (NE) | ☐ Puerto Rico (PR) | ☐ Wyoming (WY) |
| ☒ California (CA) | ☐ Kansas (KS) | ☐ Nevada (NV) | ☐ Rhode Island (RI) | |
| ☐ Colorado (CO) | ☐ Kentucky (KY) | ☐ New Hampshire (NH) | ☐ South Carolina (SC) | ☐ American Samoa (AS) |
| ☐ Connecticut (CT) | ☐ Louisiana (LA) | ☐ New Jersey (NJ) | ☐ South Dakota (SD) | ☐ FS of Micronesia (FM) |
| ☐ Delaware (DE) | ☐ Maine (ME) | ☐ New Mexico (NM) | ☐ Tennessee (TN) | ☐ Guam (GU) |
| ☐ District of Columbia (DC) | ☐ Maryland (MD) | ☐ New York (NY) | ☐ Texas (TX) | ☐ Marshall Islands (MH) |
| ☐ Florida (FL) | ☐ Massachusetts (MA) | ☐ North Carolina (NC) | ☐ Utah (UT) | ☐ N Mariana Islands (MP) |
| ☐ Georgia (GA) | ☐ Michigan (MI) | ☐ North Dakota (ND) | ☐ Vermont (VT) | ☐ Palau (PW) |
| ☐ Hawaii (HI) | ☐ Minnesota (MN) | ☐ Ohio (OH) | ☐ Virginia (VA) | ☐ Virgin Islands (VI) |

| Date of initial interview | Exam period start | Exam period end | Corrective action or response due date *(30 days)* |
|---|---|---|---|
| 9/19/2017 | 02/01/2017 | 07/31/2017 | 04/28/2023 |

**Apparent Anti-Money Laundering Program Violations**

| Date | 31 C.F.R. Chapter X Violation and Description of Regulation |
|---|---|
| 9/19/2017 | § 1022.210(d)(1) (formerly 103.125(d)(1)) Policies, Procedures, and Internal Controls - Money Services Business |
| 9/19/2017 | § 1022.210(d)(2) Anti-Money Laundering Program - Designation of Compliance Officer |
| 9/19/2017 | § 1022.210(d)(4) Anti-Money Laundering Program - Independent Review |
| | |
| | |
| | |
| | |
| | |
| | |

**Apparent Reporting and Recordkeeping Violations**

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 2/1/2017 - 7/31/2017 | $1,449,717.43 | See Attachment 1 | § 1022.313 |
| 2/1/2017 - 7/31/2017 | $587,725.25 | See Attachment 2 | § 1022.313 |
| 2/1/2017 - 7/31/2017 | $2,037,442.68 | See Attachment 3 | § 1022.312 |
| 2/1/2017 - 7/31/2017 | $2,696,927.26 | See Attachment 4 | § 1022.314 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## Explanation of Apparent Violations Regulations and Recommendations

31 C.F.R. § 1022.210(d)(1)
Anti-Money Laundering Program Requirements for Money Services Businesses – Internal Controls
You, as a money services business, must develop, implement and maintain an effective Anti-Money Laundering program. At a minimum your program must incorporate policies, procedures, and internal controls to reasonably assure compliance with the Bank Secrecy Act. This includes, to the extent applicable to your business, requirements for verifying customer identification, filing reports, creating and retaining records, and responding to law enforcement requests. In addition, any automated data processing systems should integrate your compliance procedures with the system. The following internal control deficiencies have been identified.

You have a written anti-money laundering (AML) program. However, the AML program is not adequate. The AML program fails to
(1) be risk based. The AML program has not been adjusted based on risk and a risk assessment has never been completed. Sarang Corp (Sarang) operates closely with a related MSB, Joyro Investment Inc. (Joyro) that is located at the same location. Policies and procedures have not been adjusted to identify and prevent structuring between both corporations.
(2) ensure policies are in place to prevent and monitor financial crimes through high risk and high volume check cashing transactions.
(3) provide adequate policies and procedures to identify CTR filing requirements, specifically when multiple checks are cashed.
(4) provide procedures to file MSB registration.
(5) provide initial training.

Your failed to implement the AML program as follows:
(1) File all required CTRs.
(2) Not accept third party checks.
(3) Verify the customer's identification prior to cashing a check
(4) Keep a record/receipt of the transaction
(5) File a CTR for multiple checks
(6) Obtain all information (SSN, occupation, etc. for CTR transactions)


31 C.F.R. § 1022.210(d)(2)
Anti-Money Laundering Program Requirements for Money Services Business - Designation of a Compliance Officer
You, as a money services business, are required to designate a qualified person to assure day-to-day compliance with your anti-money laundering program and the Bank Secrecy Act. The responsibilities of such person shall include assuring that: reports are properly filed and records are created and retained, the compliance program is updated as necessary to reflect current requirements of the Bank Secrecy Act, and education and/or training of appropriate personnel is provided.

Mr. Bon Kang Koo was the designated compliance officer during the examination period. Mr. Koo failed to ensure day to day compliance with the BSA. He failed to ensure the AML program was updated and implemented, failed to identify all CTR filing requirements, and failed to verify customers prior to conducting transactions. The lack of monitoring lead to systemic failure to file reports. Mr. Koo also failed to ensure independent reviews were conducted.


31 C.F.R. § 1022.210(d)(4)
Anti-Money Laundering Program Requirements for Money Services Businesses - Independent Review
You, as a money services business, are required to provide for an independent review to monitor and maintain an adequate program. The scope and frequency of your review should be commensurate with the risk of the financial services you provide. Such review may be conducted by an officer or employee so long as the reviewer is not the person you have designated as the compliance officer.

You failed to conduct periodic independent review. An independent review has never been conducted.


31 C.F.R. § 1022.313
Currency Transaction Reports by Money Services Businesses - Aggregate Transactions
You, as a money services business, are required to file a Currency Transaction Report, on multiple currency transactions, if you have knowledge that the transactions are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day.

You failed to identify and file 91 CTRs from Sarang for multiple checks cashed aggregating greater than $10,000 for one individual in one day during the examination period. See attachment 1.

You also failed to identify and file 37 CTRs from the combination of Sarang and Joyro check cashing transactions aggregating greater than $10,000 for one individual in one day during the examination period. See attachment 2.

**Explanation of Apparent Violations Regulations and Recommendations**

31 C.F.R § 1022.312

Identification Required for Transactions Conducted at Money Services Businesses

You, as a money services business, are required to verify and record the name and address of an individual conducting one or more transactions within a business day where a Currency Transaction Report would be required.  You must secure the information prior to concluding the transaction. In addition, you are required to record the identity, account number, and the social security or taxpayer identification number, if any, of any person or entity on whose behalf the individual is conducting the transaction.

You conducted 128 CTR transactions and failed to verify the name and address and obtain a social security number prior to conducting the transactions. See attachment 3.


31 C.F.R. § 1022.314

Structured Transactions - Money Services Businesses

No person shall, for the purpose of evading the reporting requirements of the Bank Secrecy Act, cause or attempt to cause a financial institution to fail to file a Currency Transaction Report, to file a Currency Transaction Report with a material omission or misstatement of fact, or to structure or assist in structuring, or attempt to structure, any transactions with one or more financial institution.

A person structures a transaction if the person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the currency transaction reporting requirements.

131 structuring transactions were identified for the examination period from 2/1/2017 to 7/31/2017. The structured transactions included cashing multiple checks for the same customer within 10 days period to avoid CTR filing. See Attachment 4.

| Form **13727** (July 2007) | Department of the Treasury - Internal Revenue Service<br>**Acceptance Statement** |
|---|---|

| Business name<br>Sarang Corp | Employer Identification Number (EIN)<br>42-1582020 |
|---|---|

| Business address<br>9814 Garvey Ave. #21A & B | Telephone number<br>(626) 244 6259 |
|---|---|

| City<br>South El Monte | State<br>California | Zip code<br>91733 |
|---|---|---|

I, _____ have received and reviewed Form 13726, *Summary of Examination Findings and Recommendations*, addressing specific areas of noncompliance with the Bank Secrecy Act recordkeeping and reporting requirements, dated _____.

I agree to follow the recommendations and to correct the Anti-Money Laundering program, reporting and recordkeeping violations.

I will take the following specific corrective action(s) by _____.

| Signature | Title | Date |
|---|---|---|

Attachment 1 | Apparent Reporting and Recordkeeping Violations | Page 1 of 3

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 5/1/2017 | $ 18,323.17 | A&E Design Inc | § 1022.313 |
| 5/30/2017 | $ 13,982.81 | A&E Design Inc | § 1022.313 |
| 4/3/2017 | $ 18,333.56 | All Time Fashion Inc | § 1022.313 |
| 4/14/2017 | $ 14,188.88 | All Time Fashion Inc | § 1022.313 |
| 7/31/2017 | $ 18,799.11 | All Time Fashion Inc | § 1022.313 |
| 5/8/2017 | $ 13,123.14 | Bright Collar Apparel Inc | § 1022.313 |
| 4/24/2017 | $ 17,147.30 | CTL Industry Corp | § 1022.313 |
| 2/10/2017 | $ 10,218.04 | HD Creation Trading | § 1022.313 |
| 3/9/2017 | $ 17,406.92 | HD Creation Trading | § 1022.313 |
| 3/13/2017 | $ 15,441.53 | HD Creation Trading | § 1022.313 |
| 4/22/2017 | $ 18,448.55 | HD Creation Trading | § 1022.313 |
| 4/24/2017 | $ 19,207.19 | HD Creations Trading Inc | § 1022.313 |
| 5/30/2017 | $ 14,633.88 | HD Creations Trading Inc | § 1022.313 |
| 6/2/2017 | $ 15,019.40 | HD Creations Trading Inc | § 1022.313 |
| 6/12/2017 | $ 10,692.99 | HD Creations Trading Inc | § 1022.313 |
| 6/22/2017 | $ 19,043.44 | HD Creations Trading Inc | § 1022.313 |
| 6/27/2017 | $ 16,092.45 | HD Creations Trading Inc | § 1022.313 |
| 7/10/2017 | $ 14,077.34 | HD Creations Trading Inc | § 1022.313 |
| 7/31/2017 | $ 22,494.78 | HD Creations Trading Inc | § 1022.313 |
| 4/19/2017 | $ 18,668.03 | Ifashion S DE R.L. DE C.V. | § 1022.313 |
| 6/2/2017 | $ 13,012.56 | Ifashion S DE R.L. DE C.V. | § 1022.313 |
| 6/7/2017 | $ 15,676.70 | Ifashion S DE R.L. DE C.V. | § 1022.313 |
| 6/12/2017 | $ 17,818.52 | Ifashion S DE R.L. DE C.V. | § 1022.313 |
| 6/19/2017 | $ 16,991.37 | Ifashion S DE R.L. DE C.V. | § 1022.313 |
| 7/13/2017 | $ 12,608.34 | Ifashion S DE R.L. DE C.V. | § 1022.313 |
| 2/8/2017 | $ 16,617.25 | KSL Industry Corp | § 1022.313 |
| 2/17/2017 | $ 11,376.54 | KSL Industry Corp | § 1022.313 |
| 2/18/2017 | $ 14,042.11 | KSL Industry Corp | § 1022.313 |
| 2/13/2017 | $ 10,020.88 | Legacy Apparel Inc | § 1022.313 |
| 2/25/2017 | $ 10,672.60 | Legacy Apparel Inc | § 1022.313 |
| 3/6/2017 | $ 19,760.40 | Legacy Apparel Inc | § 1022.313 |
| 7/6/2017 | $ 13,292.68 | Legacy Apparel Inc | § 1022.313 |
| 7/31/2017 | $ 18,712.93 | Legacy Apparel Inc | § 1022.313 |
| 3/27/2017 | $ 12,088.59 | MLE Trading Inc | § 1022.313 |
| 3/7/2017 | $ 17,899.10 | NKQ Production | § 1022.313 |
| 4/3/2017 | $ 13,341.49 | NKQ Production | § 1022.313 |
| 4/13/2017 | $ 16,290.45 | NKQ Production | § 1022.313 |
| 4/14/2017 | $ 12,375.50 | NKQ Production | § 1022.313 |
| 4/15/2017 | $ 15,427.62 | NKQ Production | § 1022.313 |
| 4/22/2017 | $ 14,256.48 | NKQ Production | § 1022.313 |
| 5/1/2017 | $ 25,825.01 | NKQ Production | § 1022.313 |
| 5/22/2017 | $ 17,057.21 | NKQ Production | § 1022.313 |
| 5/23/2017 | $ 17,323.42 | NKQ Production | § 1022.313 |
| 5/24/2017 | $ 16,027.11 | NKQ Production | § 1022.313 |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 7/5/2017 | $ 18,030.38 | NKQ Production | § 1022.313 |
| 7/12/2017 | $ 10,573.23 | NKQ Production | § 1022.313 |
| 7/14/2017 | $ 17,921.97 | NKQ Production | § 1022.313 |
| 7/18/2017 | $ 14,960.19 | NKQ Production | § 1022.313 |
| 7/28/2017 | $ 11,799.16 | NKQ Production | § 1022.313 |
| 4/3/2017 | $ 11,440.02 | PYL Production Inc | § 1022.313 |
| 4/21/2017 | $ 12,765.06 | PYL Production Inc | § 1022.313 |
| 5/1/2017 | $ 14,900.49 | PYL Production Inc | § 1022.313 |
| 7/12/2017 | $ 13,596.66 | PYL Production Inc | § 1022.313 |
| 7/20/2017 | $ 19,758.46 | PYL Production Inc | § 1022.313 |
| 5/18/2017 | $ 12,545.68 | S&B Fashion Inc | § 1022.313 |
| 6/9/2017 | $ 15,840.00 | Sunshine Roofing Inc | § 1022.313 |
| 3/20/2017 | $ 16,698.83 | T&A Production Inc | § 1022.313 |
| 3/31/2017 | $ 15,054.69 | T&A Production Inc | § 1022.313 |
| 4/3/2017 | $ 22,003.53 | T&A Production Inc | § 1022.313 |
| 4/4/2017 | $ 12,870.00 | T&A Production Inc | § 1022.313 |
| 4/10/2017 | $ 19,172.24 | T&A Production Inc | § 1022.313 |
| 4/11/2017 | $ 18,047.21 | T&A Production Inc | § 1022.313 |
| 4/22/2017 | $ 12,606.66 | T&A Production Inc | § 1022.313 |
| 4/28/2017 | $ 17,820.00 | T&A Production Inc | § 1022.313 |
| 5/1/2017 | $ 13,648.22 | T&A Production Inc | § 1022.313 |
| 5/2/2017 | $ 16,344.90 | T&A Production Inc | § 1022.313 |
| 5/12/2017 | $ 15,221.25 | T&A Production Inc | § 1022.313 |
| 5/13/2017 | $ 15,651.80 | T&A Production Inc | § 1022.313 |
| 5/16/2017 | $ 13,028.90 | T&A Production Inc | § 1022.313 |
| 5/22/2017 | $ 16,859.40 | T&A Production Inc | § 1022.313 |
| 5/23/2017 | $ 14,877.23 | T&A Production Inc | § 1022.313 |
| 6/1/2017 | $ 14,091.46 | T&A Production Inc | § 1022.313 |
| 6/2/2017 | $ 18,013.47 | T&A Production Inc | § 1022.313 |
| 7/7/2017 | $ 16,457.74 | T&A Production Inc | § 1022.313 |
| 7/12/2017 | $ 12,399.45 | T&A Production Inc | § 1022.313 |
| 7/14/2017 | $ 13,529.08 | T&A Production Inc | § 1022.313 |
| 7/20/2017 | $ 17,166.70 | T&A Production Inc | § 1022.313 |
| 5/1/2017 | $ 15,414.48 | Tammy Place | § 1022.313 |
| 3/13/2017 | $ 19,485.50 | Zen Creation Industry Corp | § 1022.313 |
| 7/31/2017 | $ 14,509.49 | Zenzen Production Inc | § 1022.313 |
| 2/21/2017 | $ 13,340.26 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 3/8/2017 | $ 11,791.26 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 3/9/2017 | $ 10,880.80 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 3/13/2017 | $ 19,199.31 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 4/10/2017 | $ 43,867.11 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 4/11/2017 | $ 12,599.03 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 5/11/2017 | $ 13,380.62 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 6/1/2017 | $ 19,627.25 | NKQ Production/ Khai Supplies Inc | § 1022.313 |

Attachment 1                    Apparent Reporting and Recordkeeping Violations                    Page 3 of 3

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|------|--------|-----------------|---------------------|
| 6/6/2017 | $ 19,573.74 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 7/7/2017 | $ 19,356.78 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| 7/21/2017 | $ 17,140.37 | NKQ Production/ Khai Supplies Inc | § 1022.313 |
| | $ 1,449,717.43 | | |
| | | | |

Attachment 2        Apparent Reporting and Recordkeeping Violations        Page 1 of 1

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 3/3/2017 | $ 19,429.49 | Kassandra Fashion | § 1022.313 |
| 3/10/2017 | $ 10,940.77 | CTL Industry Corp | § 1022.313 |
| 3/16/2017 | $ 10,311.84 | CTL Industry Corp | § 1022.313 |
| 3/20/2017 | $ 15,044.04 | CTL Industry Corp | § 1022.313 |
| 3/28/2017 | $ 20,620.71 | CTL Industry Corp | § 1022.313 |
| 3/28/2017 | $ 18,800.60 | KSL Industry Corp | § 1022.313 |
| 4/3/2017 | $ 15,769.22 | CTL Industry Corp | § 1022.313 |
| 4/10/2017 | $ 19,627.00 | KSL Industry Corp | § 1022.313 |
| 4/11/2017 | $ 14,460.71 | CTL Industry Corp | § 1022.313 |
| 4/17/2017 | $ 15,618.24 | CTL Industry Corp | § 1022.313 |
| 4/19/2017 | $ 20,090.66 | CTL Industry Corp | § 1022.313 |
| 4/25/2017 | $ 13,185.10 | CTL Industry Corp | § 1022.313 |
| 4/28/2017 | $ 27,208.08 | CTL Industry Corp | § 1022.313 |
| 4/28/2017 | $ 19,252.53 | Kassandra Fashion | § 1022.313 |
| 5/1/2017 | $ 15,810.20 | CTL Industry Corp | § 1022.313 |
| 5/1/2017 | $ 25,159.37 | KSL Industry Corp | § 1022.313 |
| 5/3/2017 | $ 12,087.90 | CTL Industry Corp | § 1022.313 |
| 5/5/2017 | $ 17,399.25 | CTL Industry Corp | § 1022.313 |
| 5/5/2017 | $ 10,311.84 | KSL Industry Corp | § 1022.313 |
| 5/8/2017 | $ 13,890.69 | CTL Industry Corp | § 1022.313 |
| 5/10/2017 | $ 19,015.67 | Kassandra Fashion | § 1022.313 |
| 5/17/2017 | $ 11,067.27 | CTL Industry Corp | § 1022.313 |
| 5/19/2017 | $ 14,524.59 | CTL Industry Corp | § 1022.313 |
| 5/22/2017 | $ 14,217.55 | CTL Industry Corp | § 1022.313 |
| 5/26/2017 | $ 12,733.63 | CTL Industry Corp | § 1022.313 |
| 6/5/2017 | $ 15,468.75 | CTL Industry Corp | § 1022.313 |
| 6/6/2017 | $ 19,579.97 | KSL Industry Corp | § 1022.313 |
| 6/9/2017 | $ 18,303.93 | CTL Industry Corp | § 1022.313 |
| 6/22/2017 | $ 13,157.10 | CTL Industry Corp | § 1022.313 |
| 6/27/2017 | $ 11,305.80 | CTL Industry Corp | § 1022.313 |
| 7/5/2017 | $ 13,191.75 | CTL Industry Corp | § 1022.313 |
| 7/5/2017 | $ 12,539.52 | KSL Industry Corp | § 1022.313 |
| 7/20/2017 | $ 16,424.10 | CTL Industry Corp | § 1022.313 |
| 7/21/2017 | $ 20,047.25 | CTL Industry Corp | § 1022.313 |
| 7/21/2017 | $ 15,082.40 | KSL Industry Corp | § 1022.313 |
| 7/31/2017 | $ 14,568.10 | CTL Industry Corp | § 1022.313 |
| 7/31/2017 | $ 11,479.63 | KSL Industry Corp | § 1022.313 |
|  | $ 587,725.25 |  |  |
|  |  |  |  |

Attachment 3          Apparent Reporting and Recordkeeping Violations          Page 1 of 4

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 5/1/2017 | $ 18,323.17 | A&E Design Inc | § 1022.312 |
| 5/30/2017 | $ 13,982.81 | A&E Design Inc | § 1022.312 |
| 4/3/2017 | $ 18,333.56 | All Time Fashion Inc | § 1022.312 |
| 4/14/2017 | $ 14,188.88 | All Time Fashion Inc | § 1022.312 |
| 7/31/2017 | $ 18,799.11 | All Time Fashion Inc | § 1022.312 |
| 5/8/2017 | $ 13,123.14 | Bright Collar Apparel Inc | § 1022.312 |
| 4/24/2017 | $ 17,147.30 | CTL Industry Corp | § 1022.312 |
| 2/10/2017 | $ 10,218.04 | HD Creation Trading | § 1022.312 |
| 3/9/2017 | $ 17,406.92 | HD Creation Trading | § 1022.312 |
| 3/13/2017 | $ 15,441.53 | HD Creation Trading | § 1022.312 |
| 4/22/2017 | $ 18,448.55 | HD Creation Trading | § 1022.312 |
| 4/24/2017 | $ 19,207.19 | HD Creations Trading Inc | § 1022.312 |
| 5/30/2017 | $ 14,633.88 | HD Creations Trading Inc | § 1022.312 |
| 6/2/2017 | $ 15,019.40 | HD Creations Trading Inc | § 1022.312 |
| 6/12/2017 | $ 10,692.99 | HD Creations Trading Inc | § 1022.312 |
| 6/22/2017 | $ 19,043.44 | HD Creations Trading Inc | § 1022.312 |
| 6/27/2017 | $ 16,092.45 | HD Creations Trading Inc | § 1022.312 |
| 7/10/2017 | $ 14,077.34 | HD Creations Trading Inc | § 1022.312 |
| 7/31/2017 | $ 22,494.78 | HD Creations Trading Inc | § 1022.312 |
| 4/19/2017 | $ 18,668.03 | Ifashion S DE R.L. DE C.V. | § 1022.312 |
| 6/2/2017 | $ 13,012.56 | Ifashion S DE R.L. DE C.V. | § 1022.312 |
| 6/7/2017 | $ 15,676.70 | Ifashion S DE R.L. DE C.V. | § 1022.312 |
| 6/12/2017 | $ 17,818.52 | Ifashion S DE R.L. DE C.V. | § 1022.312 |
| 6/19/2017 | $ 16,991.37 | Ifashion S DE R.L. DE C.V. | § 1022.312 |
| 7/13/2017 | $ 12,608.34 | Ifashion S DE R.L. DE C.V. | § 1022.312 |
| 2/8/2017 | $ 16,617.25 | KSL Industry Corp | § 1022.312 |
| 2/17/2017 | $ 11,376.54 | KSL Industry Corp | § 1022.312 |
| 2/18/2017 | $ 14,042.11 | KSL Industry Corp | § 1022.312 |
| 2/13/2017 | $ 10,020.88 | Legacy Apparel Inc | § 1022.312 |
| 2/25/2017 | $ 10,672.60 | Legacy Apparel Inc | § 1022.312 |
| 3/6/2017 | $ 19,760.40 | Legacy Apparel Inc | § 1022.312 |
| 7/6/2017 | $ 13,292.68 | Legacy Apparel Inc | § 1022.312 |
| 7/31/2017 | $ 18,712.93 | Legacy Apparel Inc | § 1022.312 |
| 3/27/2017 | $ 12,088.59 | MLE Trading Inc | § 1022.312 |
| 3/7/2017 | $ 17,899.10 | NKQ Production | § 1022.312 |
| 4/3/2017 | $ 13,341.49 | NKQ Production | § 1022.312 |
| 4/13/2017 | $ 16,290.45 | NKQ Production | § 1022.312 |
| 4/14/2017 | $ 12,375.50 | NKQ Production | § 1022.312 |
| 4/15/2017 | $ 15,427.62 | NKQ Production | § 1022.312 |
| 4/22/2017 | $ 14,256.48 | NKQ Production | § 1022.312 |
| 5/1/2017 | $ 25,825.01 | NKQ Production | § 1022.312 |
| 5/22/2017 | $ 17,057.21 | NKQ Production | § 1022.312 |
| 5/23/2017 | $ 17,323.42 | NKQ Production | § 1022.312 |
| 5/24/2017 | $ 16,027.11 | NKQ Production | § 1022.312 |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|------|--------|-----------------|---------------------|
| 7/5/2017 | $ 18,030.38 | NKQ Production | § 1022.312 |
| 7/12/2017 | $ 10,573.23 | NKQ Production | § 1022.312 |
| 7/14/2017 | $ 17,921.97 | NKQ Production | § 1022.312 |
| 7/18/2017 | $ 14,960.19 | NKQ Production | § 1022.312 |
| 7/28/2017 | $ 11,799.16 | NKQ Production | § 1022.312 |
| 4/3/2017 | $ 11,440.02 | PYL Production Inc | § 1022.312 |
| 4/21/2017 | $ 12,765.06 | PYL Production Inc | § 1022.312 |
| 5/1/2017 | $ 14,900.49 | PYL Production Inc | § 1022.312 |
| 7/12/2017 | $ 13,596.66 | PYL Production Inc | § 1022.312 |
| 7/20/2017 | $ 19,758.46 | PYL Production Inc | § 1022.312 |
| 5/18/2017 | $ 12,545.68 | S&B Fashion Inc | § 1022.312 |
| 6/9/2017 | $ 15,840.00 | Sunshine Roofing Inc | § 1022.312 |
| 3/20/2017 | $ 16,698.83 | T&A Production Inc | § 1022.312 |
| 3/31/2017 | $ 15,054.69 | T&A Production Inc | § 1022.312 |
| 4/3/2017 | $ 22,003.53 | T&A Production Inc | § 1022.312 |
| 4/4/2017 | $ 12,870.00 | T&A Production Inc | § 1022.312 |
| 4/10/2017 | $ 19,172.24 | T&A Production Inc | § 1022.312 |
| 4/11/2017 | $ 18,047.21 | T&A Production Inc | § 1022.312 |
| 4/22/2017 | $ 12,606.66 | T&A Production Inc | § 1022.312 |
| 4/28/2017 | $ 17,820.00 | T&A Production Inc | § 1022.312 |
| 5/1/2017 | $ 13,648.22 | T&A Production Inc | § 1022.312 |
| 5/2/2017 | $ 16,344.90 | T&A Production Inc | § 1022.312 |
| 5/12/2017 | $ 15,221.25 | T&A Production Inc | § 1022.312 |
| 5/13/2017 | $ 15,651.80 | T&A Production Inc | § 1022.312 |
| 5/16/2017 | $ 13,028.90 | T&A Production Inc | § 1022.312 |
| 5/22/2017 | $ 16,859.40 | T&A Production Inc | § 1022.312 |
| 5/23/2017 | $ 14,877.23 | T&A Production Inc | § 1022.312 |
| 6/1/2017 | $ 14,091.46 | T&A Production Inc | § 1022.312 |
| 6/2/2017 | $ 18,013.47 | T&A Production Inc | § 1022.312 |
| 7/7/2017 | $ 16,457.74 | T&A Production Inc | § 1022.312 |
| 7/12/2017 | $ 12,399.45 | T&A Production Inc | § 1022.312 |
| 7/14/2017 | $ 13,529.08 | T&A Production Inc | § 1022.312 |
| 7/20/2017 | $ 17,166.70 | T&A Production Inc | § 1022.312 |
| 5/1/2017 | $ 15,414.48 | Tammy Place | § 1022.312 |
| 3/13/2017 | $ 19,485.50 | Zen Creation Industry Corp | § 1022.312 |
| 7/31/2017 | $ 14,509.49 | Zenzen Production Inc | § 1022.312 |
| 2/21/2017 | $ 13,340.26 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 3/8/2017 | $ 11,791.26 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 3/9/2017 | $ 10,880.80 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 3/13/2017 | $ 19,199.31 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 4/10/2017 | $ 43,867.11 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 4/11/2017 | $ 12,599.03 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 5/11/2017 | $ 13,380.62 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 6/1/2017 | $ 19,627.25 | NKQ Production/ Khai Supplies Inc | § 1022.312 |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 6/6/2017 | $ 19,573.74 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 7/7/2017 | $ 19,356.78 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 7/21/2017 | $ 17,140.37 | NKQ Production/ Khai Supplies Inc | § 1022.312 |
| 3/3/2017 | $ 19,429.49 | Kassandra Fashion | § 1022.312 |
| 3/10/2017 | $ 10,940.77 | CTL Industry Corp | § 1022.312 |
| 3/16/2017 | $ 10,311.84 | CTL Industry Corp | § 1022.312 |
| 3/20/2017 | $ 15,044.04 | CTL Industry Corp | § 1022.312 |
| 3/28/2017 | $ 20,620.71 | CTL Industry Corp | § 1022.312 |
| 3/28/2017 | $ 18,800.60 | KSL Industry Corp | § 1022.312 |
| 4/3/2017 | $ 15,769.22 | CTL Industry Corp | § 1022.312 |
| 4/10/2017 | $ 19,627.00 | KSL Industry Corp | § 1022.312 |
| 4/11/2017 | $ 14,460.71 | CTL Industry Corp | § 1022.312 |
| 4/17/2017 | $ 15,618.24 | CTL Industry Corp | § 1022.312 |
| 4/19/2017 | $ 20,090.66 | CTL Industry Corp | § 1022.312 |
| 4/25/2017 | $ 13,185.10 | CTL Industry Corp | § 1022.312 |
| 4/28/2017 | $ 27,208.08 | CTL Industry Corp | § 1022.312 |
| 4/28/2017 | $ 19,252.53 | Kassandra Fashion | § 1022.312 |
| 5/1/2017 | $ 15,810.20 | CTL Industry Corp | § 1022.312 |
| 5/1/2017 | $ 25,159.37 | KSL Industry Corp | § 1022.312 |
| 5/3/2017 | $ 12,087.90 | CTL Industry Corp | § 1022.312 |
| 5/5/2017 | $ 17,399.25 | CTL Industry Corp | § 1022.312 |
| 5/5/2017 | $ 10,311.84 | KSL Industry Corp | § 1022.312 |
| 5/8/2017 | $ 13,890.69 | CTL Industry Corp | § 1022.312 |
| 5/10/2017 | $ 19,015.67 | Kassandra Fashion | § 1022.312 |
| 5/17/2017 | $ 11,067.27 | CTL Industry Corp | § 1022.312 |
| 5/19/2017 | $ 14,524.59 | CTL Industry Corp | § 1022.312 |
| 5/22/2017 | $ 14,217.55 | CTL Industry Corp | § 1022.312 |
| 5/26/2017 | $ 12,733.63 | CTL Industry Corp | § 1022.312 |
| 6/5/2017 | $ 15,468.75 | CTL Industry Corp | § 1022.312 |
| 6/6/2017 | $ 19,579.97 | KSL Industry Corp | § 1022.312 |
| 6/9/2017 | $ 18,303.93 | CTL Industry Corp | § 1022.312 |
| 6/22/2017 | $ 13,157.10 | CTL Industry Corp | § 1022.312 |
| 6/27/2017 | $ 11,305.80 | CTL Industry Corp | § 1022.312 |
| 7/5/2017 | $ 13,191.75 | CTL Industry Corp | § 1022.312 |
| 7/5/2017 | $ 12,539.52 | KSL Industry Corp | § 1022.312 |
| 7/20/2017 | $ 16,424.10 | CTL Industry Corp | § 1022.312 |
| 7/21/2017 | $ 20,047.25 | CTL Industry Corp | § 1022.312 |
| 7/21/2017 | $ 15,082.40 | KSL Industry Corp | § 1022.312 |
| 7/31/2017 | $ 14,568.10 | CTL Industry Corp | § 1022.312 |
| 7/31/2017 | $ 11,479.63 | KSL Industry Corp | § 1022.312 |
| | $ 2,037,442.68 | | |
| | | | |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 3/10/2017-3/13/2017 | $ 19,709.53 | A&E Design Inc | § 1022.314 |
| 3/31/2017-4/10/2017 | $ 37,211.20 | A&E Design Inc | § 1022.314 |
| 4/14/2017-4/24/2017 | $ 35,362.85 | A&E Design Inc | § 1022.314 |
| 5/13/2017-5/15/2017 | $ 17,808.00 | A&E Design Inc | § 1022.314 |
| 5/27/2017-6/1/2017 | $ 25,287.40 | A&E Design Inc | § 1022.314 |
| 2/11/2017-2/13/2017 | $ 17,563.50 | All Time Fashion Inc | § 1022.314 |
| 2/18/2017-2/21/2017 | $ 10,174.00 | All Time Fashion Inc | § 1022.314 |
| 3/3/2017-3/6/2017 | $ 18,858.70 | All Time Fashion Inc | § 1022.314 |
| 5/2/2017-5/3/2017 | $ 19,394.50 | All Time Fashion Inc | § 1022.314 |
| 5/19/2017-5/22/2017 | $ 15,152.90 | All Time Fashion Inc | § 1022.314 |
| 5/27/2017-5/30/2017 | $ 17,533.75 | All Time Fashion Inc | § 1022.314 |
| 6/21/2017-6/22/2017 | $ 19,477.75 | All Time Fashion Inc | § 1022.314 |
| 6/29/2017-6/30/2017 | $ 14,904.00 | All Time Fashion Inc | § 1022.314 |
| 7/7/2017-7/10/2017 | $ 19,442.50 | All Time Fashion Inc | § 1022.314 |
| 5/26/2017-5/30/2017 | $ 14,655.00 | Blu Diamond Apparel Inc | § 1022.314 |
| 7/27/2017-7/28/2017 | $ 12,751.60 | Blu Diamond Apparel Inc | § 1022.314 |
| 4/10/2017-4/11/2017 | $ 10,697.85 | Bright Collar Apparel Inc | § 1022.314 |
| 4/23/2017-4/24/2017 | $ 15,006.80 | Bright Collar Apparel Inc | § 1022.314 |
| 5/22/2017-5/30/2017 | $ 26,422.15 | Bright Collar Apparel Inc | § 1022.314 |
| 6/3/2017-6/5/2017 | $ 13,543.95 | Bright Collar Apparel Inc | § 1022.314 |
| 6/17/2017-6/19/2017 | $ 15,491.93 | Bright Collar Apparel Inc | § 1022.314 |
| 6/26/2017-6/28/2017 | $ 12,501.40 | Bright Collar Apparel Inc | § 1022.314 |
| 7/15/2017-7/17/2017 | $ 10,870.37 | Bright Collar Apparel Inc | § 1022.314 |
| 7/24/2017-7/25/2017 | $ 11,010.50 | Bright Collar Apparel Inc | § 1022.314 |
| 4/19/2017-4/24/2017 | $ 12,179.41 | Chiang Wang D.C. | § 1022.314 |
| 6/22/2017-6/26/2017 | $ 22,237.75 | Crystal Textile Inc | § 1022.314 |
| 3/10/2017-3/13/2017 | $ 12,901.28 | CTL Industry Corp | § 1022.314 |
| 4/3/2017-4/7/2017 | $ 31,634.78 | CTL Industry Corp | § 1022.314 |
| 4/10/2017-4/14/2017 | $ 36,822.75 | CTL Industry Corp | § 1022.314 |
| 5/2/2017-5/8/2017 | $ 32,552.00 | CTL Industry Corp | § 1022.314 |
| 5/13/2017-5/22/2017 | $ 27,526.56 | CTL Industry Corp | § 1022.314 |
| 6/10/2017-6/12/2017 | $ 14,606.75 | CTL Industry Corp | § 1022.314 |
| 7/1/2017-7/3/2017 | $ 17,293.15 | CTL Industry Corp | § 1022.314 |
| 7/8/2017-7/10/2017 | $ 10,911.45 | CTL Industry Corp | § 1022.314 |
| 7/1/2017-7/3/2017 | $ 13,871.75 | Eden Finishing Inc | § 1022.314 |
| 2/22/2017-2/23/2017 | $ 10,206.31 | Dial Transportation Inc | § 1022.314 |
| 3/6/2017-3/7/2017 | $ 17,589.77 | Dial Transportation Inc | § 1022.314 |
| 4/4/2017-4/5/2017 | $ 14,086.11 | Dial Transport, Inc | § 1022.314 |
| 3/2/2017-3/6/2017 | $ 25,552.50 | HD Creation Trading | § 1022.314 |
| 3/14/2017-3/16/2017 | $ 12,014.65 | HD Creation Trading | § 1022.314 |
| 3/21/2017-3/22/2017 | $ 16,934.00 | HD Creation Trading | § 1022.314 |
| 3/31/2017-4/4/2017 | $ 21,787.60 | HD Creation Trading | § 1022.314 |
| 4/11/2017-4/17/2017 | $ 29,867.86 | HD Creation Trading | § 1022.314 |
| 5/1/2017-5/5/2017 | $ 15,728.70 | HD Creation Trading | § 1022.314 |
| 5/27/2017-6/1/2017 | $ 21,794.45 | HD Creations Trading Inc | § 1022.314 |
| 6/5/2017-6/10/2017 | $ 26,343.20 | HD Creations Trading Inc | § 1022.314 |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 6/19/2017-6/20/2017 | $ 14,092.15 | HD Creations Trading Inc | § 1022.314 |
| 7/27/2017-7/28/2017 | $ 17,421.20 | HD Creations Trading Inc | § 1022.314 |
| 2/1/2017-2/2/2017 | $ 11,325.45 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 2/8/2017-2/16/2017 | $ 41,840.05 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 2/22/2017-2/24/2017 | $ 22,980.70 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 3/11/2017-3/18/2017 | $ 37,352.75 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 3/20/2017-3/27/2017 | $ 54,830.40 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 3/28/2017-3/31/2017 | $ 22,793.10 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 4/3/2017-4/10/2017 | $ 47,560.09 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 4/11/2017-4/17/2017 | $ 52,541.35 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 4/21/2017-4/26/2017 | $ 26,857.10 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 5/27/2017-5/30/2017 | $ 14,962.30 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 6/3/2017-6/5/2017 | $ 18,399.80 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 6/8/2017-6/17/2017 | $ 54,921.70 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 7/5/2017-7/12/2017 | $ 34,921.15 | Ifashion S DE R.L. DE C.V. | § 1022.314 |
| 4/27/2017-4/28/2017 | $ 19,747.00 | Kassandra Fashion | § 1022.314 |
| 5/8/2017-5/10/2017 | $ 15,459.25 | Kassandra Fashion | § 1022.314 |
| 6/20/2017-6/21/2017 | $ 15,599.25 | Kassandra Fashion | § 1022.314 |
| 2/15/2017-2/21/2017 | $ 16,481.00 | KSL Industry Corp | § 1022.314 |
| 5/15/2017-5/16/2017 | $ 11,832.21 | KSL Industry Corp | § 1022.314 |
| 5/19/2017-5/22/2017 | $ 12,553.60 | KSL Industry Corp | § 1022.314 |
| 5/27/2017-6/1/2017 | $ 33,851.74 | KSL Industry Corp | § 1022.314 |
| 6/5/2017-6/6/2017 | $ 14,566.75 | KSL Industry Corp | § 1022.314 |
| 6/8/2017-6/9/2017 | $ 19,620.50 | KSL Industry Corp | § 1022.314 |
| 6/19/2017-6/20/2017 | $ 11,267.75 | KSL Industry Corp | § 1022.314 |
| 2/3/2017-2/6/2017 | $ 19,965.30 | Legacy Apparel Inc | § 1022.314 |
| 2/11/2017-2/17/2017 | $ 21,078.40 | Legacy Apparel Inc | § 1022.314 |
| 2/18/2017-2/27/2017 | $ 17,430.25 | Legacy Apparel Inc | § 1022.314 |
| 3/15/2017-3/22/2017 | $ 39,688.05 | Legacy Apparel Inc | § 1022.314 |
| 4/10/2017-4/11/2017 | $ 17,571.00 | Legacy Apparel Inc | § 1022.314 |
| 4/21/2017-4/24/2017 | $ 15,348.00 | Legacy Apparel Inc | § 1022.314 |
| 6/7/2017-6/8/2017 | $ 11,063.70 | Legacy Apparel Inc | § 1022.314 |
| 6/21/2017-6/22/2017 | $ 13,270.00 | Legacy Apparel Inc | § 1022.314 |
| 6/28/2017-6/29/2017 | $ 17,017.55 | Legacy Apparel Inc | § 1022.314 |
| 7/13/2017-7/14/2017 | $ 12,667.70 | Legacy Apparel Inc | § 1022.314 |
| 7/20/2017-7/28/2017 | $ 29,042.85 | Legacy Apparel Inc | § 1022.314 |
| 2/10/2017-2/17/2017 | $ 30,915.65 | NKQ Production | § 1022.314 |
| 3/4/2017-3/14/2017 | $ 22,150.30 | NKQ Production | § 1022.314 |
| 3/20/2017-3/21/2017 | $ 17,975.18 | NKQ Production | § 1022.314 |
| 3/25/2017-3/27/2017 | $ 10,092.68 | NKQ Production | § 1022.314 |
| 5/6/2017-5/8/2017 | $ 13,187.50 | NKQ Production | § 1022.314 |
| 5/30/2017-6/5/2017 | $ 24,668.50 | NKQ Production | § 1022.314 |
| 6/14/2017-6/19/2017 | $ 19,637.00 | NKQ Production | § 1022.314 |
| 7/1/2017-7/3/2017 | $ 16,151.00 | NKQ Production | § 1022.314 |
| 7/6/2017-7/11/2017 | $ 14,916.00 | NKQ Production | § 1022.314 |
| 7/19/2017-7/20/2017 | $ 12,913.80 | NKQ Production | § 1022.314 |

| Date | Amount | Person Involved | 31 C.F.R. Chapter X |
|---|---|---|---|
| 7/25/2017-7/27/2017 | $ 26,067.25 | NKQ Production | § 1022.314 |
| 2/18/2017-2/21/2017 | $ 12,870.00 | PYL Production Inc | § 1022.314 |
| 3/29/2017-3/31/2017 | $ 23,953.00 | PYL Production Inc | § 1022.314 |
| 4/22/2017-4/24/2017 | $ 12,862.15 | PYL Production Inc | § 1022.314 |
| 5/6/2017-5/8/2017 | $ 18,162.00 | PYL Production Inc | § 1022.314 |
| 5/19/2017-5/22/2017 | $ 14,170.00 | PYL Production Inc | § 1022.314 |
| 5/31/2017-6/1/2017 | $ 17,020.00 | PYL Production Inc | § 1022.314 |
| 6/2/2017-6/7/2017 | $ 34,486.40 | PYL Production Inc | § 1022.314 |
| 6/9/2017-6/12/2017 | $ 10,418.00 | PYL Production Inc | § 1022.314 |
| 6/20/2017-6/21/2017 | $ 15,865.00 | PYL Production Inc | § 1022.314 |
| 7/3/2017-7/10/2017 | $ 43,334.60 | PYL Production Inc | § 1022.314 |
| 2/2/2017-2/3/2017 | $ 16,905.70 | Sing Kung Corp | § 1022.314 |
| 3/6/2017-3/9/2017 | $ 19,695.25 | Star Creative Corp | § 1022.314 |
| 3/16/2017-3/20/2017 | $ 17,000.00 | Sunshine Roofing Co | § 1022.314 |
| 7/3/2017-7/5/2017 | $ 16,600.00 | Sunshine Roofing Inc | § 1022.314 |
| 7/13/2017-7/17/2017 | $ 12,701.20 | Sunshine Roofing Inc | § 1022.314 |
| 7/28/2017-7/31/2017 | $ 14,400.00 | Sunshine Roofing Inc | § 1022.314 |
| 2/15/2017-2/17/2017 | $ 13,470.00 | T&A Production Inc | § 1022.314 |
| 2/25/2017-2/27/2017 | $ 16,346.69 | T&A Production Inc | § 1022.314 |
| 3/4/2017-3/6/2017 | $ 18,659.90 | T&A Production Inc | § 1022.314 |
| 3/10/2017-3/13/2017 | $ 17,584.76 | T&A Production Inc | § 1022.314 |
| 3/27/2017-4/1/2017 | $ 27,415.00 | T&A Production Inc | § 1022.314 |
| 4/12/2017-4/15/2017 | $ 29,746.00 | T&A Production Inc | § 1022.314 |
| 4/17/2017-4/20/2017 | $ 25,172.23 | T&A Production Inc | § 1022.314 |
| 4/24/2017-4/29/2017 | $ 13,781.47 | T&A Production Inc | § 1022.314 |
| 6/3/2017-6/5/2017 | $ 16,535.78 | T&A Production Inc | § 1022.314 |
| 6/14/2017-6/21/2017 | $ 34,138.50 | T&A Production Inc | § 1022.314 |
| 6/26/2017-6/29/2017 | $ 10,687.40 | T&A Production Inc | § 1022.314 |
| 3/3/2017-3/8/2017 | $ 28,668.26 | T&T Industry Inc | § 1022.314 |
| 3/10/2017-3/13/2017 | $ 11,971.55 | T&T Industry Inc | § 1022.314 |
| 4/22/2017-4/28/2017 | $ 38,972.65 | T&T Industry Trading Inc | § 1022.314 |
| 5/15/2017-5/22/2017 | $ 28,294.95 | T&T Industry Trading Inc | § 1022.314 |
| 5/27/2017-5/30/2017 | $ 19,038.75 | T&T Industry Trading Inc | § 1022.314 |
| 5/15/2017-5/16/2017 | $ 11,747.25 | Tammy Place | § 1022.314 |
| 5/27/2017-5/30/2017 | $ 11,322.75 | Tammy Place | § 1022.314 |
| 2/4/2017-2/6/2017 | $ 19,630.25 | W.C. Tech Corp | § 1022.314 |
| 2/21/2017-2/24/2017 | $ 28,838.50 | W.C. Tech Corp | § 1022.314 |
| 7/7/2017-7/10/2017 | $ 13,733.00 | Zenzen Production Inc | § 1022.314 |
| 7/20/2017-7/21/2017 | $ 18,857.41 | Zenzen Production Inc | § 1022.314 |
| | $ 2,696,927.26 | | |
| | | | |

**<u>CERTIFICATE OF SERVICE</u>**

I, **Catherine Wilkinson**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**Plea Agreement**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☒ Via email, as follows:

☐ By Federal Express, as follows:

**sleen@bsfllp.com**

This Certificate is executed on **November 20, 2023**, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

*Catherine Wilkinson*
_____
Catherine Wilkinson
Legal Assistant